IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

| | | |
|---|---|---|
| ADRIAN EMMERSON BUSBY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-14-CV-341-MAT |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On March 5, 2013, Plaintiff filed an application for DIB in which he alleged disability beginning November 1, 2011 due to "[a]nxiety, stress, shoulder injury, fingers, back injury, left knee,

left ankle, depression [and] hbp" (high blood pressure). (R. 137-140, 165).[1]  At the time of filing,

Plaintiff was 39 years old and had previous work experience as an insurance agent and an FBI agent.

(R. 137, 167).   After his application was denied initially and upon reconsideration, Plaintiff

requested a hearing before an administrative law judge ("ALJ").  (R. 82-85, 88-90, 92-93).   On

February 12, 2014, he appeared with his attorney for a video teleconference hearing.  (R. 30-54).

On March 11, 2014, the ALJ issued a written decision denying benefits on the ground that Plaintiff

is able to perform jobs that exist in significant numbers in the national economy, and therefore is not

disabled. (R. 14-25).  On July 14, 2012, the Appeals Council denied Plaintiff's request for review,

thereby making the ALJ's decision the Commissioner's final administrative decision.  (R. 1-5).

## II. ISSUE PRESENTED

Whether the ALJ's residual functional capacity ("RFC") finding is supported by substantial

evidence.

## III. DISCUSSION

### A. Standard of Review

This Court's review is limited to a determination of whether the Commissioner's final

decision is supported by substantial evidence on the record as a whole and whether the

Commissioner applied the proper legal standards in evaluating the evidence. *Myers v. Apfel*, 238

F.3d 617, 619 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)).

Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant

evidence as a reasonable mind might accept to support a conclusion. *Ripley v. Chater*, 67 F.3d 552,

---

[1] Reference to the record of administrative proceedings is designated by (R.[page number(s)]).

555 (5th Cir. 1995). A finding of "no substantial evidence" will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

In determining whether there is substantial evidence to support the findings of the Commissioner, the court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). If the Commissioner applied the proper legal standards and her findings are supported by substantial evidence, they are conclusive and must be affirmed. *Id.*

B. Evaluation Process and Burden of Proof

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment or combination of impairments prevents the claimant from performing past relevant work; and, (5) whether the

impairment or combination of impairments prevents the claimant from doing any other work.  20 C.F.R. § 404.1520.  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the analysis.  *Greenspan*, 38 F.3d at 236.

The claimant bears the burden of proof on the first four steps of the sequential analysis. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995).  Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing.  *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).  The Commissioner may meet this burden by the use of opinion testimony of vocational experts or by use of administrative guidelines in the form of regulations.  *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982).  If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Id.*

C. The ALJ's Decision

In her written decision, the ALJ determined as a threshold matter that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. (R. 16). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 1, 2011. *Id.* At step two, the ALJ determined Plaintiff has severe impairments consisting of left shoulder impingement, left knee patellofemoral syndrome, low back pain, trochanteric bursitis, Raynaud's syndrome, hypertension, and an adjustment disorder with mixed anxiety and depressed mood. (R. 16). At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-18).

4

Before reaching step four, the ALJ assessed Plaintiff's RFC and found he is able to perform light work,[2] except that he can never climb ladders, ropes, or scaffolds; can occasionally kneel and crawl; cannot perform constant overhead lifting with his left arm; cannot perform constant fine manipulation with his left hand of items smaller than a paper clip; is limited to occupations which can be performed using a hand held assistive device for ambulating on uneven terrain and for prolonged ambulations; should avoid even moderate exposure to extreme cold or excessive vibration; can understand, carry out, and remember detailed, but not complex, instructions; can make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting; and, can perform work requiring only occasional interaction with the public. (R. 18-19). In making this RFC assessment, the ALJ determined Plaintiff's allegations regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible. (R. 20-24).

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a federal agent or as an insurance agent. (R. 24). At step five, using Rule 202.21 of the Medical-Vocational Guidelines[3] as a framework and based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and, therefore, is not disabled. (R. 25).

---

[2] Light work is defined in the regulations as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[3] Codified at 20 C.F.R. Part 404, Subpart P, Appendix 2.

D. Analysis of Plaintiff's Claims

Plaintiff contends the RFC determination is not supported by substantial evidence because the ALJ failed to include all limitations related to his severe left shoulder, left knee, lower back, and hip problems. Plaintiff argues the evidence supports greater limitations in his RFC for lifting/carrying, sitting, and standing/walking than those assessed by the ALJ. Plaintiff further contends the evidence also supports the need for a sit/stand option. Plaintiff does not challenge the mental component of the ALJ's RFC assessment.

RFC is defined as the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545; SSR 96-8p. The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine Plaintiff's abilities despite his physical and mental limitations. 20 C.F.R. § 404.1545. The ALJ must consider the limiting effects of Plaintiff's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given to the evidence is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

Plaintiff bears the burden to establish disability and to provide or identify medical and other evidence of his impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). Plaintiff's own subjective complaints, without supporting objective medical evidence,

are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

There is no medical opinion in the record with regard to Plaintiff's alleged need for a sit/stand option or assessing functional limitations inconsistent with a limited range of light work. In support of his claim that the evidence supports such limitations, Plaintiff cites to his testimony and reports of severe pain and extreme functional limitations. (Pl's Brief, ECF No. 23, pp. 5-6). He additionally relies on x-ray and MRI findings, treatment records, and his service connected disability rating from the Department of Veterans Affairs ("VA") of 60% due to cold injury residuals, left knee condition, and degenerative arthritis. (ECF. No 23, pp. 6-9).

The medical records show Plaintiff has a history of left shoulder AC joint injury in 1998 while in the military with subsequent surgical repair; previous left knee arthroscopic surgery in 2001; and diagnosis of Raynaud's syndrome (R. 235). On January 6, 2012, Plaintiff underwent a consultative physical examination performed by Jose A. Barahona, M.D. (R. 234-238). On physical examination, Dr. Barahona noted Plaintiff was well developed and in no acute distress. (R. 236). Strength and sensation in his left upper and lower extremities was slightly decreased. (R. 237). He was able to half squat and perform toe and heel lifts. *Id.* Left shoulder range of motion was limited as follows: abduction 100 degrees, adduction 40 degrees, flexion 100 degrees, extension 30 degrees, and rotation 20 degrees. *Id.* Left knee range of motion was limited to 90 degrees flexion and 10 degrees extension. *Id.* Lumbar spine exam showed full range of motion with flexion 90 degrees, extension 40 degrees, and lateral 30 degrees. *Id.* An x-ray of the left shoulder showed calcification from the distal clavicle to the distoid process. (R. 238). The impression was

7

coracoclavicular synostosis,[4] probably post-traumatic. *Id.* Dr. Barahona's assessment was left shoulder impingement syndrome, left knee osteoarthritis, Raynaud's syndrome,[5] and depression. (R. 237).

As discussed by the ALJ, Plaintiff underwent a consultative physical examination performed by Nilesh Mehta, M.D. on July 23, 2013. (R. 326-328). Plaintiff complained of fatigue, wrist pain, elbow pain, neck pain, knee pain, shoulder pain, foot pain, back pain, ankle pain, and left hip pain. (R. 326). He reported he could walk less than a block before he is in pain. *Id.* He also complained of shortness of breath on walking. *Id.* He reported being able to lift 5 to 10 pounds. *Id.* Dr. Mehta observed Plaintiff was in no acute distress. (R. 327). His gait was normal. *Id.* He had difficulty walking on his toes and was unable to jump or squat. *Id.* Power in his extremities, however, was normal and equal. *Id.* Movement in his cervical spine was normal. *Id.* Dr. Mehta reported that Plaintiff had normal sensation and normal grip strength, and he was able to button clothes. *Id.* He had normal range of motion in his hips and normal movement in the knee and ankle joints. *Id.* In fact, Dr. Mehta assessed normal range of motion in all joints. *Id.*

In assessing the RFC, the ALJ considered Plaintiff's treatment records from the VA, including his service connected 60% disability rating and all medically determinable impairments. She correctly noted VA records show Plaintiff has seven rated disabilities of 10% each, including

---

[4] Synostosis is the osseous union of bones that are normally distinct. DORLAND'S ILLUS. MEDICAL DICTIONARY 1773 (29th ed. 2000).

[5] Raynaud's phenomenon is the intermittent bilateral ischemia of the fingers, toes, and sometimes ears and nose, with severe pallor and often paresthesias and pain, usually brought on by cold or emotional stimuli and relieved by heat; it is usually due to an underlying disease or anatomical abnormality. When it is idiopathic or primary it is called Raynaud's disease. DORLAND'S ILLUS. MEDICAL DICTIONARY 1371 (29th ed. 2000).

cold injury residuals (presumably Reynaud's), left knee condition, and degenerative arthritis, and a service connection of 60%. (R. 23, citing R. 275). She explained that although it was difficult to translate the VA ratings into an RFC, she considered all of the VA records and all medically determinable impairments in assessing Plaintiff's RFC. (R. 23). A VA rating is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. *Chambliss*, 269 F.3d at 522; *see also* 20 C.F.R. §§ 404.1504, 404.1512(b)(5).

In finding Plaintiff can perform a limited range of light work, the ALJ properly gave great weight to the opinions of non-examining state agency medical consultants who determined Plaintiff retains the RFC for light work with appropriate postural and environmental limitations. (R. 23). "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR-96-6p, 1996 WL 374180 at *1; *See* 20 C.F.R. § 404.1527(e)(2)(i). On April 17, 2013, Laurence Ligon, M.D., a state agency medical consultant ("SAMC"), opined Plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently, and is not otherwise limited in his ability to push/pull, including operating hand and/or foot controls; and, can sit, stand and/or walk for about 6 hours in an 8-hour workday with normal breaks. ( R. 60). Dr. Ligon found Plaintiff is limited in reaching in front and/or laterally with his left arm due to his history of left shoulder impingement and pain with range of motion. (R. 61).

On July 25, 2013, SAMC Robin Rosenstock, M.D. also found Plaintiff is able to lift 20 pounds occasionally and 10 pounds frequently, and is not otherwise limited in his ability to push/pull, including operating hand and/or foot controls; and, can sit, stand and/or walk for about

6 hours in an 8-hour workday with normal breaks. (R. 74). Dr. Rosenstock similarly imposed a "[l]eft in front and/or laterally" reaching limitation. (R. 75). In support of these conclusions, Dr. Rosenstock cited to the consultative physical examination findings of Dr. Mehta. (R. 326-328).

In her written opinion, the ALJ performed a thorough analysis of Plaintiff's credibility. She set forth a very detailed four paragraph summary of his testimony at the administrative hearing. (R. 19-20). In finding Plaintiff was not fully credible, the ALJ discussed many factors that reflected negatively on his credibility. She noted that despite his allegations of numbness and tingling in his fingers and toes due to Raynaud's, he was not being treated for this condition other than the advice to wear gloves in cold weather. (R. 21). He told his primary care physician in March 2012 that his fingers were throbbing, and on examination they were cold, but otherwise normal. *Id.* He was offered a prescription medication, but declined. *Id.*

The ALJ also noted that Plaintiff testified he has used a cane since September 2013, primarily for walking long distances and transitioning from sitting to standing. (R. 19, 34). Plaintiff further testified the cane was not prescribed. (R. 19). The ALJ correctly observed that none of Plaintiff's treating or examining physicians noted that he needed a cane or other assistive device with ambulation or observed he was using a cane. (R. 22). Despite the contradicting medical evidence, the ALJ gave Plaintiff's hearing testimony the benefit of the doubt and included a limitation in the RFC to occupations that can be performed while using a hand held assistive device for ambulating on uneven terrain and for prolonged ambulations. (R. 23).

The ALJ also noted that none of Plaintiff's treating or examining sources have indicated he is unable to work or even that he has any specific work-related functional limitations. (R. 23). She also stated that Plaintiff had existing left shoulder, left knee, and Raynaud's syndrome symptoms

prior to the November 1, 2011 alleged onset date, but these conditions did not prevent him from working as an insurance agent or FBI agent. (R. 22). Furthermore, there was no evidence of sudden worsening of these conditions in November 2011.

Assessment of credibility is the province of the ALJ, and her credibility determination is entitled to great deference. *Greenspan*, 38 F.3d at 237; *Newton*, 209 F.3d at 459. Plaintiff's own subjective complaints, without supporting objective medical evidence, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529. The objective medical evidence does not support Plaintiff's allegations of extreme pain and limitations. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (subjective complaints unsubstantiated by medical findings need not be credited over conflicting medical evidence). Simply stated, the evidence cited by Plaintiff does not support the need for either a sit/stand option or further limitations in his RFC than those assessed by the ALJ.

The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The task of the Court is merely to determine if there is substantial evidence in the record as a whole which supports the ALJ's decision. *Id.*, citing *Greenspan*, 38 F.3d at 240. As substantial evidence supports the ALJ's decision, it must be affirmed

<u>CONCLUSION</u>

It is therefore ORDERED that the decision of the Commissioner be, and it is hereby, AFFIRMED.

SIGNED and ENTERED this ____ day of September, 2015.

MIGUEL A. TORRES
UNITED STATES MAGISTRATE JUDGE

11